**Sharon J. CRISTIANO, on her own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**The COURTS OF the JUSTICES OF THE PEACE IN AND FOR NEW CASTLE COUNTY and the State of Delaware, Court No. 12, Marc Niedzielski, Judge of Justices of the Peace Court No. 12, in his official capacity, Charles C. Sharp, Constable for Justices of the Peace Court No. 12, in his official capacity, Defendants.**

**Civ. A. No. 86–149 MMS.**

United States District Court,
D. Delaware.

March 30, 1987.

Thomas J. Motter and John X. Denney, Jr., UAW Legal Services Plan, Newark, Del., for plaintiffs.

Malcolm S. Cobin and Don C. Brown, Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiffs move for certification of a class consisting of all present and future United Auto Workers ("UAW") members who have been or will be subjected to attachment of their wages under 10 *Del.C.* §§ 3501, 9582–9583,[1] the Proceeding by Attachment statute ("Attachment Statute").

The putative plaintiff class challenges the constitutionality of the Delaware attachment procedure on the ground that it violates their right to due process. Defendants,[2] the New Castle County Justices of the Peace Courts ("J.P. Courts"), Judge Marc Niedzielski of J.P. Court No. 12, and Constable Charles Sharp, filed a motion for summary judgment arguing that the claim of the named class representative, Sharon Cristiano ("Cristiano"), is moot and, as a consequence, the named representative has no right to represent the class. The Court will determine whether Cristiano can represent the putative class, and then analyze whether this action meets the requirements for certification of a class under Federal Rule of Civil Procedure 23.

## I. FACTS

Cristiano is a UAW member employed by the Chrysler Corporation at its Newark, Delaware, assembly plant. In September, 1985, Dr. Elmer Hewlett filed a debt action against Cristiano in J.P. Court No. 12 to collect $44 owed him for medical services provided to plaintiff's daughter. The J.P. Court sent a summons by certified mail on October 28, 1985 to the last known address for Cristiano, which Dr. Hewlett had furnished. Dkt. 27 at A–2. The post office returned the summons stamped "Moved, left no address." *Id.* at A–3. On December 5, 1985, Dr. Hewlett filed for an attachment in lieu of summons, under 10 *Del.C.* § 9582, directed to the Chrysler Corpora-

---

1. 10 *Del.C.* § 3501 provides:

   A writ of domestic attachment may be issued against an inhabitant of this State upon proof satisfactory to the court that the defendant cannot be found, or that the defendant is justly indebted to the plaintiff in a sum exceeding $50, and has absconded from his usual place of abode or is about to leave the State or has gone out of the State with intent to defraud his creditors or to elude process.
   10 *Del.C.* § 9582 provides:
   In lieu of proceeding by summons in any civil action for debt brought before a justice of the peace, the proceeding may be by attachment, as provided by §§ 9583 and 9584 of this title and in the manner provided in such sections.
   10 *Del.C.* § 9583 provides:

   On an affidavit made and filed by the plaintiff, or any credible person for him, that the defendant is justly indebted to the plaintiff in a stated sum not exceeding $2,500 and has absconded, or is as he believes, about to remove himself, or his effects out of the State, with intent to defraud his creditors, or intentionally conceals himself, so that process of summons cannot be served on him, or is a nonresident of the State, as the case may be, the justice shall issue a writ of attachment.

2. Elmer C. Hewlett, D.O., the creditor in the underlying debt action giving rise to the attachment, was a defendant in this suit until July 30, 1986, when the Court entered a default judgment against him. A stipulation of damages was approved on November 13, 1986 and Dr. Hewlett is no longer a party to this litigation.

tion for $44 plus $26 in costs. *Id.* at A–4. The summons issued on January 14, 1986, and Constable Sharp effected service on Chrysler on January 16. *Id.* at A–5, A–11. Chrysler garnished Cristiano's wages on January 23, at which time she received her first notice of the debt action and a hearing set for February 26. Under the Attachment Statute, Cristiano could not directly challenge the attachment prior to the hearing. After three continuances, the hearing was to be held on April 16.

On April 7, 1986, Cristiano filed suit in federal court seeking declaratory, injunctive, and compensatory relief for alleged constitutional violations in the enforcement of the Attachment Statute.[3] She filed simultaneously a motion for class certification on the declaratory and injunctive claims, with the putative class to include all present and future hourly employees at Chrysler's Newark plant. Plaintiff subsequently amended her motion to include all present and future UAW members who were or "will be subjected to those attachment procedures in the future."[4] Dkt. 43. On April 7, Dr. Hewlett wrote to Judge Niedzielski requesting that the suit against Cristiano be withdrawn. The J.P. Court ordered the attachment released by letter to Chrysler dated April 8. Plaintiff received her garnished wages on April 16.

## II. ANALYSIS

Defendants argue that Cristiano's claim for injunctive and declaratory relief is moot because the underlying attachment has been released.[5] Once Dr. Hewlett requested the J.P. Court to dismiss the debt action, defendants assert Cristiano lost the necessary "personal stake" in the outcome of the litigation to meet the constitutional standing requirement of a live case or controversy. Moreover, they argue that a class representative with a moot claim cannot meet the adequate representation prerequisite of Federal Rule of Civil Procedure 23(a)(4) for certification of a class.

Defendants have failed to distinguish two related but analytically distinct issues: the constitutional question of mootness and the requirements of the Federal Rules. *See* Note, *Class Standing and the Class Representative,* 94 Harv.L.Rev. 1637, 1653 & n. 74 (1981). Defendants' argument also overlooks the different analyses applied to individual and class claims when the issue of mootness arises. The court will begin by reviewing the basic doctrine of mootness, and then consider the special circumstance of a class action in which the putative representative's claims are moot.

### A. Mootness

■ The exercise of judicial power under Article III "depends upon the existence of a case or controversy." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). That controversy must remain live throughout the litigation, and not merely when it was commenced. *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974). The rationale for this requirement

---

**3.** On February 27, 1986, Cristiano had sought leave to intervene as a plaintiff in *Brothers v. J.P. Court No. 13,* Civ.A. No. 86–50 MMS, a case with facts virtually identical to this action. Before this Court ruled on the motion, Cristiano filed a separate federal action. *Brothers* remains on the docket, but the parties have not taken any further action pending the outcome of the instant case.

**4.** Defendants do not challenge the propriety of plaintiff's amendment of the class certification motion, or dispute that the amended motion relates back to the original motion.

**5.** Cristiano also filed an individual claim for damages resulting from the unconstitutional attachment against the J.P. Court, Judge Niedziel-ski, and Constable Sharp. The class claims are only for injunctive and declaratory relief. The defendants raised the damages issue tangentially in their briefs, and did not treat it at oral argument. Although the issue need not be decided at this point, the Court notes that Cristiano will face substantial immunity problems if she presses her request for monetary relief against the state defendants. *See* U.S. Const. amend XI (sovereign immunity); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967) (absolute judicial immunity); *Malley v. Briggs,* 475 U.S. 335, ——, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity for officers).

is to constrict the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process...." *United States Parole Comm. v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968)). In considering the point at which a case becomes moot, the Third Circuit Court of Appeals has held:

> [a] case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*Finberg v. Sullivan*, 658 F.2d 93, 97–98 (3d Cir.1980); *see New Jersey Turnpike Authority v. Jersey Central Power*, 772 F.2d 25, 31 (3d Cir.1985); *Galda v. Bloustein*, 686 F.2d 159, 162–63 (3d Cir.1982).

■ Even if a case falls within the above circumstances, it is not necessarily moot "if the underlying dispute between the parties is one 'capable of repetition, yet evading review.'" *New Jersey Turnpike Authority*, 772 F.2d at 31. The "capable of repetition, yet evading review" exception is well-established, *see Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), and is triggered when two elements are present: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (*per curiam*); *see Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982) (*per curiam*). The second factor has been interpreted narrowly by courts, requiring a plaintiff to prove beyond a mere probability that the same action will be taken again against that person. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983); *New Jersey Turnpike Authority*, 772 F.2d at 32.

Defendants argue that the possibility that Cristiano's wages will be garnished in the future under the Attachment Statute is at best speculative, and realistically nil. According to defendants, the fact that she *may* be sued on a debt in J.P. Court and concurrently be unavailable for execution of an ordinary summons is the type of circumstance found to be a "mere physical or theoretical possibility" in *Murphy v. Hunt*, 445 U.S. at 482, 102 S.Ct. at 1183. Although Cristiano asserts that, as a consumer in a credit-oriented society, she is likely to suffer a similar garnishment again, it is doubtful whether, standing alone, her claim could survive a close mootness analysis.

The key, however, is that Cristiano has not brought an individual claim, but one on behalf of a class of wage earners who are also subject to the Delaware Attachment Statute. The class action status alters the mootness analysis because a new set of concerns is presented, and the treatment of class claims is fundamentally different from the treatment of individual actions. *See Reid v. INS*, 766 F.2d 113, 114 (3d Cir.1985) ("In a case involving a single plaintiff, rather than a class action," court applied strict reasonable probability of repetition requirement.); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3533.9 (1984).

**B. Class Actions and Mootness**

■ In *Geraghty*, the Supreme Court stated: "When, however, there is no chance that the named plaintiff's expired claim will reoccur, mootness can still be avoided through certification of a class prior to expiration of the named plaintiff's personal claim." 445 U.S. at 398, 100 S.Ct. at 1210. If the representative plaintiff had a live case or controversy at the time the class action was originally filed, then the subsequent mooting of that claim does not automatically require dismissing the action. The claims of other class members will be sufficient to meet the actual controversy requirement of Article III. *See Sosna v.*

*Iowa,* 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975) ("Although the controversy is no longer live as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.").

■ The failure to certify the class prior to the mooting of the representative's claim is not necessarily fatal to the action. The Supreme Court recognized in *Sosna* that "[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Id.* at 402 n. 11, 95 S.Ct. at 559 n. 11. In those cases, the class certification will "relate back" to the filing of the motion, thereby permitting the representative to pursue the live claims of fellow class-members despite the subsequent mootness of the individual claim. The Court explicitly recognized the need for this relation back principle to protect class members' rights where "claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Geraghty,* 445 U.S. at 399, 100 S.Ct. at 1210; *See Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11 (1975) (permitting class treatment as "suitable exception" to mootness where pretrial detention will usually end before class can be certified). The Seventh Circuit Court of Appeals noted that the rationale for the doctrine

> ... is that the requirements of Article III cannot be interpreted so as to preclude full judicial review of challenged government action whose intrinsically fleeting duration would prevent any single plaintiff from remaining subject to that action for the time necessary to complete the litigation.

*Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984).

■ In deciding whether to permit certification to relate back to the filing of the complaint, the court should first look to the nature of the challenged act to determine whether it would have a reasonable opportunity to review the certification motion prior to the representative's claim becoming moot. Most cases will entail looking solely at the duration of the alleged wrong in relation to the representative. *See Cruz v. Hauck,* 627 F.2d 710, 717 (5th Cir.1980) (relation back permitted where representative inmates released prior to certification). Others require the court to consider whether the challenged act or circumstances can be altered so quickly that virtually any representative's claim will be mooted prior to certification. *See Milonas v. Williams,* 691 F.2d 931, 937 (10th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983) (relation back permitted where representatives transferred out of reform school prior to certification); *Susman v. Lincoln American Corp.,* 587 F.2d 866, 870 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980) (relation back where defendants tendered monetary damages to representatives to render representatives' claims moot). After making the above inquiries, the court considers whether the representative has pursued the certification motion with reasonable diligence to permit prompt adjudication. *Trotter,* 748 F.2d at 1184–85; *Finberg v. Sullivan,* 634 F.2d 50, 64 (3d Cir.1980) (en banc); *Susman,* 587 F.2d at 870. This latter review aids in determining whether the representative continues to have a sufficient "stake" in the outcome to address the concerns underlying the mootness doctrine. The question is also related to the Rule 23(a)(4) adequacy of representation requirement.

The parties agree that attachments under 10 *Del.C.* § 9582 generally last from 30 to 60 days. Once service is effected on the employer, a hearing is scheduled within 30 days, at which time the defendant must appear and defend against the complaint. Dkt. 35 at A–7. Alternatively, a defendant can dissolve the attachment by posting security in an amount sufficient to satisfy an adverse judgment. 10 *Del.C.* § 9589(a). A defendant can also request postponement of the hearing, as Cristiano did, but the

wages remain garnished until the hearing or the depositing of security.

■ The duration of the alleged unconstitutional attachment is too brief to have permitted this Court to fairly review Cristiano's motion for class certification. *See Ameron, Inc. v. U.S. Army Corps of Engineers*, 787 F.2d 875, 881 (3d Cir.1986) (90–day period for administrative resolution of bid protest evades review, therefore suit not moot). The plaintiff undertook discovery concerning the scope and nature of the class immediately upon filing the motion, and this process was not completed until October, six months later. Defendants' argument that plaintiff could have sought expedited review is unpersuasive because of the time necessary to build a record sufficient for this Court to make a reasoned decision on the motion. Plaintiff pursued this motion diligently, and brought the issue of class certification to the Court's attention at the earliest possible moment.

Moreover, the circumstances surrounding the dismissal of the underlying debt action against Cristiano lead the Court to believe that any constitutional challenge to an attachment will be mooted by the creditor-plaintiff before the question can be considered on the merits. The attachments in J.P. Court are for fairly small amounts, no more than $2,500 under 10 *Del.C.* § 9583, and it is doubtful that a creditor will want to defend against a constitutional challenge where legal fees and expenses will be far more than the original claim. The release of attachment after receiving notice it will be contested occurred in both *Cristiano* and the related case of *Brothers v. J.P. Court No. 13*, Civ. A. No. 86–50 MMS, amply demonstrating that persons subject to attachment in lieu of summons do not have a reasonable opportunity to seek the

Court's protection of their constitutional right to due process.

Plaintiff's motion falls within the narrow band of cases that permit relation back of class certification motions to the date of filing, and the status of the class and its representative will be reviewed as of that time.[6] On the day Cristiano filed the complaint, April 7, 1986, her wages were attached and she was subject to the alleged unconstitutional action of the defendants. Subsequent events cannot therefore affect her right to represent a class of wage earners also subject to the Delaware statute if the motion meets the requirements for class actions under Federal Rule of Civil Procedure 23.

### C. Class Certification

■ Plaintiff moves for certification of a class constituting:

[A]ll present and future UAW members employed in Delaware who were or are subjected to attachments in lieu of summons by Delaware Justices of the Peace Courts from 1984 to the present and/or who will be subjected to those attachment procedures in the future....

Dkt. 42. Plaintiff bears the burden of establishing that the four requirements of Federal Rule of Civil Procedure 23(a) are met, and that the class satisfies one section of Rule 23(b). *Ortiz v. Eichler*, 616 F.Supp. 1046, 1053 (D.Del.1985), *aff'd*, 794 F.2d 889 (3d Cir.1986). The applicable parts of Rule 23 provide:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or de-

---

**6.** Defendants cite three cases in support of their argument that relation back should not be permitted: *Davis v. Ball Memorial Hospital Association*, 753 F.2d 1410 (7th Cir.1985); *Hechenberger v. Western Electric Co., Inc.*, 742 F.2d 453 (8th Cir.1984); *Nestler v. North Carolina Bd. of Law Examiners*, 611 F.2d 1380 (4th Cir.1980). The decisions are distinguishable from this case because the courts in *Hechenberger* and *Davis* found that the moot claims for injunctive relief were not of the type that evade review, and in *Nestler* the plaintiffs never moved for certification of a class.

fenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; ...

The Court will consider these requirements seriatim.

### 1. Numerosity

Plaintiff undertook a review of the files of two of the J.P. Courts, Numbers 12 and 13, to determine how many attachments under 10 *Del.C.* § 9582 those courts issued.[7] She found approximately 160 attachments in lieu of summons during the years 1984 and 1985, the only years surveyed. The defendants point out that the surveyed J.P. Courts, both in New Castle County, issue the bulk of the attachments in lieu of summons in Delaware. Of the 160 noted attachments, 41 were directed against members of the putative class of UAW workers. There are approximately 8,800 UAW members in Delaware, most of whom work at two automobile assembly plants in New Castle County.

The numerosity requirement focuses on whether the class is so numerous that joinder of all members would be impracticable. Defendants argue that the minimal number of attachments and the ease with which debtors may be identified bars certification of the class. The raw number of attachments of class members, as demonstrated by plaintiff's survey of records, falls on the lower end of the scale for finding sufficient numerosity. *See*

*Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 276 (10th Cir.1977) (46 class members satisfies Rule 23(a)(1)); *Jones v. Diamond,* 519 F.2d 1090, 1100 (5th Cir.1975) (48 members of prisoner class satisfies Rule). The number of attachments, however, serves only as a guide and is not a definition of all potential class members. Plaintiff was unable to review records from the past 15 months, which would likely contain additional attachments of UAW members. Moreover, the putative class includes all *future* attachment proceedings against UAW members. The probable number of class members is currently unknown, but the Court finds that it is large enough to prevent the joinder of all potential plaintiffs. *See Malloy v. Eichler,* 628 F.Supp. 582, 590 (D.Del.1986) (class of at least 30 persons, with an unknown number in unresearched cases, met numerosity requirement). The plaintiff's claim for injunctive and declaratory relief will, if successful, inure to the benefit of all wage earners in the state, not just UAW members. In this instance, the policies supporting the use of class actions to enjoin unconstitutional government action counsel against an overly rigid application of the numerosity requirement. *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" for maintenance of a class action. As this Court noted in a similar context, "[d]ifferences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Ortiz v. Eichler,* 616 F.Supp. at 1055 (citing cases). Especially in the context of Rule 23(b)(2) class actions, distinct factual contexts will

---

**7.** Plaintiff's counsel submitted an affidavit after oral argument detailing their review of the files from the surveyed J.P. Courts regarding the number of repeat attachments of UAW members' assets. Defendants move to strike the affidavit on the grounds that it is untimely and beyond the scope of the Court's order permitting amendment of the class certification motion. The Court has not considered the affidavit for purposes of deciding this motion.

be unified under a common claim for equitable relief.

Cristiano acknowledges the validity of the debt owed, and only contests the manner in which her wages were garnished without notice or opportunity for a prompt hearing on the attachment. That some class members may contest the legality of the debt, or that the type of property attached will differ, does not affect the central legal argument that 10 *Del.C.* § 9582 unconstitutionally deprives an attached debtor of due process rights. Any factual distinctions among the class members are irrelevant in reviewing the statute. The Court finds that there is an identity between the plaintiffs on questions of law, meeting the requirements of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties [be] typical of the claims ... of the class." The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," and "[t]hose requirements ... also tend to merge with the adequacy-of-representation requirement [of 23(a)(4)]." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). In *Weiss v. York Hospital*, the Third Circuit Court of Appeals adopted the test of Professors Wright, Miller, and Kane, 7A *Federal Practice and Procedure* § 1764 (1984) for determining typicality:

> ... while factual variations will not defeat certification where the various claims arise from the same legal theory, where the named plaintiff's individual circumstances are markedly different or where the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based, there exists the danger that the unique circumstances or legal theory will receive inordinate emphasis and that the other claims will not be pressed with equal vigor or will go unrepresented.

745 F.2d at 809 n. 36.

Rule 23(a)(3) does not require an identity of interest or circumstances between the representative and the class. Cristiano's legal theory is not unique among the class members and any factual distinctions between the plaintiffs does not relate to the core constitutional issue in the claim. Her status as a defendant who acknowledges the validity of her debt in the underlying action does not place her at odds with those who wish to contest the debt. Class members who challenge the enforceability of a debt have even more of a complaint with the operation of the Attachment Statute, since they are deprived of assets allegedly without owing the debt. The constitutional claims of all class members are identical, and *a fortiori* plaintiff is typical of the class.

### 4. Adequacy of Representation

Rule 23(a)(4) requires the Court to inquire whether "the representative parties will fairly and adequately protect the interests of the class." In *Wetzel v. Liberty Mutual Insurance Co.*, the Third Circuit Court of Appeals adopted a two-part analysis for adequacy of representation: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Plaintiff is represented by the UAW Legal Services Plan, a pre-paid legal benefit plan available to all UAW members, but which is not controlled by the union. The lead counsel in the case are experienced in class action litigation, and defendants concede the quality of plaintiff's legal representation. As noted earlier, the issue of plaintiff's potential antagonism to the interests of the class is closely related to her commonality and typicality as a class representative. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. at 157 n. 13,

102 S.Ct. at 2370 n. 13. There is no question that Cristiano's claim and legal theory coincides with all class members. She is a fully qualified representative under Rule 23(a)(4).

### 5. Rule 23(b)(2)

Plaintiff seeks to have the class certified under Rule 23(b)(2), arguing that 10 *Del.C.* § 9582 operates "on grounds generally applicable to the class" and is thus subject to injunctive or declaratory relief. The Advisory Committee Notes state that the Rule is intended to cover cases where equitable relief "will settle the legality of the behavior with respect to the class as a whole." The Court has an independent duty to determine whether plaintiff meets the standards of the Rule.

█ The Attachment Statute applies to all instances in which a person is "justly indebted" and the creditor believes the debtor "has absconded, or is ... about to remove himself, or his effects out of the state, with intent to defraud his creditors." 10 *Del.C.* § 9583. The statute is generally applicable to all class members who are or might become indebted. Prejudgment attachment statutes have a long history of constitutional challenges, *see, e.g., Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), and if found unconstitutional, are subject to injunctive relief barring enforcement. *See Parks v. "Mr. Ford"*, 556 F.2d 132, 143 (3d Cir.1977) (en banc) (enjoining statute permitting sale of plaintiff's property subject to garageman's lien).

Defendants argue that the Court should not exercise its discretion under Rule 23(b)(2) because a class action will unnecessarily complicate the case and bring no additional benefit from the litigation. In effect, defendants assert that any injunctive or declaratory relief accorded to Cristiano will automatically benefit other class members, and therefore no need exists to take the added step of granting her motion.

*See James v. Ball*, 613 F.2d 180, 186 (9th Cir.1979), *rev'd on other grounds*, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) (denial of class certification affirmed where relief sought will produce same result as formal class-wide relief); *Cook v. Luckett*, 575 F.Supp. 485, 489 (S.D.Miss.1983) (denying certification where relief sought will have same effect on class whether or not class is certified). A number of courts recognize, however, that when continuation of an action is threatened because the representative plaintiff's claim is moot, certification of the class is vital to preserve the action. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir.1981) (risk of mootness of representative's claims sufficient to create need for certification); *Perez-Funez v. District Director, INS*, 611 F.Supp. 990, 1000 (C.D.Cal.1984) (without certification, possible that merits will not be heard); *Westcott v. Califano*, 460 F.Supp. 737, 746 (D. Mass.1978) (certification protects members from risk of mootness of representative plaintiff's claim in Rule 23(b)(2) class). The substantial risk that any one person's claim will be mooted by the lapse of time or dismissal by a creditor presents sufficient need to certify the class. The analysis in Part B, *supra*, found that this action can survive the mootness of Cristiano's claim only if permitted to go forward as a class. The certification of a class in this litigation thus is of overriding importance.

The Court finds that the class meets the requirements for certification under Rule 23(b)(2).

### III. CONCLUSION

█ The proposed class meets the requirements of Rule 23. The Court will grant plaintiff's motion and issue an order certifying a class of all present and future UAW members employed in Delaware who have been, are, or will be subject to attachments in lieu of summons by Delaware Justices of the Peace Courts. The Court will deny defendants' motion for summary judgment. The grant of plaintiff's motion

will relate back to April 7, 1986, the date of the initial filing for class certification.