**Sharon J. CRISTIANO, on her own behalf and on behalf of all others similarly situated, Plaintiff,**

**v.**

**The COURTS OF THE JUSTICES OF THE PEACE IN AND FOR NEW CASTLE COUNTY and the State of Delaware, Court No. 12, Marc Niedzielski, Judge of Justices of the Peace Court No. 12, in his official capacity, Charles C. Sharp, Constable for Justices of the Peace Court No. 12, in his official capacity, Defendants.**

Civ. A. No. 86–149 MMS.

United States District Court,
D. Delaware.

Sept. 15, 1987.

---

Thomas J. Motter, and John X. Denney, Jr., UAW Legal Services Plan, Newark, Del., for plaintiff.

Malcolm S. Cobin, Don C. Brown, and Lyn A. Woodruff, Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

The Court certified a plaintiff class of all present and future United Auto Workers union members employed in Delaware who have been, are, or will be subject to attachments in lieu of summons by the Delaware Justices of the Peace Courts under 10 *Del.C.* §§ 9582–9583. *Cristiano v. Courts of the Justices of the Peace*, 115 F.R.D. 240 (D.Del.1987). The class seeks declaratory and injunctive relief in challenging the attachments executed under the statute as facially violative of their procedural due process rights under the fourteenth amendment. The parties submitted affidavits and conducted extensive depositions of relevant witnesses and have filed cross motions for summary judgment. Both sides agree

there are no material issues of fact and the matter is ripe for decision under Federal Rule of Civil Procedure 56(c). The Court finds the Delaware statutory attachment procedures applicable in the Justices of the Peace Courts for garnishing wages unconstitutional on their face.

## I.  BACKGROUND

The class representative, Sharon J. Cristiano, had seventy dollars of her wages from the Chrysler Corporation garnished under the Delaware Attachment in Lieu of Summons Statute ("Attachment Statute"), 10 *Del.C.* §§ 9582–9590, because the plaintiff in the underlying debt action had been unable to serve process on her by mail. Justice of the Peace Mark Niedzielski of Justices of the Peace Court ("J.P. Court") No. 12 signed the attachment order and Constable Charles Sharp served it on the garnishee. Cristiano filed her claim and request for class certification on April 7, 1986, and the J.P. Court released the attachment on April 8, at the creditor's request. In certifying the plaintiff class, the Court rejected defendants' argument that Cristiano's claim was mooted upon the attachment's release, holding the class claim "falls within the narrow band of cases that permit relation back of class certification motions to the date of filing...." *Id.* at 246. The case goes forward now on the question of whether the Attachment Statute is facially unconstitutional under the due process clause.

### A.  The Attachment Statute[1]

The Attachment Statute, which dates back to 1852, authorizes the J.P. Court in

---

1. Plaintiffs also challenge the constitutionality of 10 *Del.C.* § 3501, which is the General Delaware Attachment Provision. It provides:

   A writ of domestic attachment may be issued against an inhabitant of this State upon proof satisfactory to the court that the defendant cannot be found, or that the defendant is justly indebted to the plaintiff in a sum exceeding fifty dollars, and has absconded from his usual place of abode or is about to leave the State or has gone out of the State with intent to defraud his creditors or to elude process.

   Plaintiffs argue that Section 3513, which states "[e]xcept where otherwise expressly provided,

the Rules of the Superior Court shall govern the procedures in all attachments issued by justices of the peace and other inferior courts," requires the Court to consider all domestic attachment statutes. The evidence before the Court relates solely to procedures under 10 *Del.C.* §§ 9581–9590, and the writ of attachment issued in Cristiano's case was under that statute. The attachment statutes are separate, with § 3501 the general provision and §§ 9581–9590 applicable specifically to J.P. Court attachments. Section 3501 is not properly before the Court because it does not directly apply to procedures in the J.P. Court.

debt actions to bring a defendant within its jurisdiction by attaching that person's property. 10 *Del.C.* § 9582. In order to secure the defendant's appearance in this manner, the requirements of § 9583 must be followed:

> On an affidavit made and filed by the plaintiff, or any credible person for him, that the defendant is justly indebted to the plaintiff in a stated sum not exceeding $2,500 and has absconded, or is as he believes, about to remove himself, or his effects out of the state, with intent to defraud his creditors, or intentionally conceals himself, so that process of service cannot be served on him, or is a non-resident of the state, as the case may be, the justice shall issue a writ of attachment.

10 *Del.C.* § 9583 (1986 Cum.Supp.). Upon acceptance by the J.P. Court of the creditor's affidavit,[2] service on the garnishee may follow the same procedures as service of a summons.[3] 10 *Del.C.* § 9586. The attachment will be dissolved "[i]f, at any time before final judgment, the original debtor appears and gives security, to the justice's satisfaction, that he will answer the plaintiff's demand and satisfy any judgment rendered against him in such suit...." 10 *Del.C.* § 9589.

The Attachment Statute is designed to secure an appearance in J.P. Court when the defendant has left the jurisdiction or otherwise avoided service of process. The property attached is not applied to secure a judgment, default or otherwise, rendered against the defendant. If the attachment is executed by a garnishment of wages, the amount cannot exceed 15% of the salary for that pay period, and only one attachment at any one time is permitted.[4] 10 *Del.C.* § 4913. The Attachment Statute governs the practice in J.P. Court only and a separate section of the code provides for domestic attachments. *See* 10 *Del.C.* § 3501.

## B. The J.P. Courts

Delaware has a two-tier trial court system with the J.P. Courts staffed by persons without formal legal training. The J.P. Courts, Court of Common Pleas, and Superior Court have concurrent jurisdiction over debt actions of $2,500 or less. Decisions from J.P. Courts are appealable to the Superior Court, where a trial de novo and jury are available. 10 *Del.C.* §§ 9570, 9573. Procedures in J.P. Court are less formal than in the other trial courts, as for example there is no right of discovery beyond a defendant's request for a bill of particulars. Justices of the Peace Rules of Civil Practice 7. *See generally LeCates v. Justice of the Peace Court No. 4,* 423 F.Supp. 1379 (D.Del.1979), *aff'd,* 637 F.2d 898 (3d Cir.1980). The J.P. Courts serve an important function in the Delaware judicial system by providing an easily accessible tribunal for quickly settling disputes while avoiding the expense of formal litigation.

Debt actions in J.P. Courts begin with the filing of a praecipe, after which the plaintiff will attempt to serve a summons on the defendant. Resort to attachment as a means of securing the defendant's appearance is comparatively rare. Civil cases

---

**2.** Justices of the Peace Rule of Civil Practice 5(b) provides:
> No attachment in lieu of summons or forthwith summons for the commencing of an action shall issue unless with the praecipe there shall be filed the affidavit and other papers, if any, required by the statute for the issuance of such process.

**3.** Justices of the Peace Rule of Civil Practice 5(g)2 provides:
> Service of attachment in lieu of summons or garnishee process shall be made in the same manner as provided in Rule 5g, on those persons, firms or corporations subject to such service in this state. If garnishees are summoned upon a written mesne attachment the person serving the writ shall leave with them a copy of the writ and other pleadings required in the action either by statute or by these Rules. If execution of the writ required the seizure of personal property the constable shall levy thereon and make his return in the same manner as required by statute.

Copies of the applicable forms are found in the Appendix to Plaintiff's Opening Brief, Docket ("Dkt") 46A, at A–1.

**4.** The record in Ms. Cristiano's case is unclear, but the wages garnished may have exceeded 15% of her gross pay. The Court will assume for purposes of deciding these summary judgment motions that garnishments will not exceed the statutory maximum.

filed in two New Castle County J.P. Courts totalled 12,362 and 14,488 for 1984 and 1985, respectively, while the number of attachments totaled about 160 during those years. Affidavit of Deputy Chief Magistrate Morris Levenberg ("Levenberg Aff."), ¶ 14.

The process of attaching a defendant's property begins with the filing of an affidavit by the plaintiff. 10 *Del.C.* § 9583. The affidavit form requires the plaintiff to state the amount due and swear "that the defendant ... has absconded from the state, or conceals himself so that process of summons cannot be served upon him and with intent, it is believed to defraud his creditors." Appendix to Plaintiff's Opening Brief ("Pl.App."), A–1. The form does not require a statement of what means the plaintiff used to serve the summons, or the factual basis on which one swears the defendant has absconded. Both Deputy Chief Magistrate Levenberg and Justice of the Peace Ronald Cheeseman state, however, that before they will accept the affidavit and issue a writ of attachment, the plaintiff must appear before them, demonstrate that attempts at service have been unsuccessful, and state the defendant's present address is unknown. Levenberg Aff., ¶ 6; Deposition of Justice of the Peace Ronald Cheeseman ("Cheeseman Dep."), at 28. In Cristiano's case, Justice of the Peace Niedzielski states his normal course would be to question the plaintiff's representative to determine if she had checked with the Post Office about Cristiano's address before he would order the attachment. Plaintiff does not contest the descriptions provided by the Justices of the Peace of their general procedures in examining the affiant prior to issuing the writ of attachment.

Once the J.P. Court is satisfied that normal service by mail is impossible, it issues a writ.[5] 10 *Del.C.* § 9583. A J.P. Court clerk then schedules a hearing on the underlying action and directs the writ and a copy of the affidavit and praecipe to a Constable. Deposition of Constable Joseph Hojnicki ("Hojnicki Dep."), at 27. The hearing date will usually be within thirty to sixty days of the writ's issuance, 115 F.R.D. at 243, 245, but there is no statutory requirement on when a hearing is to be scheduled. For wage attachments, the Constable will serve the papers on the employer, *i.e.*, the garnishee, by delivering them to the payroll department or any other employee who can accept them. Deposition of Constable Robert Jackson ("Jackson Dep.") at 7–8; Cheeseman Dep. at 8. The Constable does not attempt to serve the defendant individually, and does not inquire whether the garnishee has control of the attached wages. If any wages are in fact attached, the garnishee retains them and does not forward them to the court or release them to the defendant.

The attachment procedure only requires service on the garnishee. 10 *Del.C.* § 9586. The writ does not direct the garnishee to provide the defendant with the documents, and Cristiano, for example, only learned of the attachment when 15% of her pay had been withheld. Although Constable Hojnicki and Justice of the Peace Cheeseman state that most garnishees will notify the defendant and forward the papers, Hojnicki Dep. at 43, Cheeseman Dep. at 34, there is no mechanism for personally informing a debtor of the suit or garnishment. Moreover, the forms used by the J.P. Court do not inform defendants of any possible relief they can seek if they do receive the affidavit and praecipe. Once the Constable serves the writ, the J.P. Court does not know whether the service has been successful until the defendant

---

**5.** 10 *Del.C.* § 9584 provides the following form for the writ of attachment:

＿＿＿＿ County, ss. The State of Delaware,

To any constable, greeting:

We command you to attach the goods and chattels, rights and credits of A.B., in order to make good to C.D., a cause of action wherein the sum of ＿＿＿＿ is demanded; and that you summon any garnishees of the said A.B. found in your bailiwick, to appear before ＿＿＿＿, one of our justices of the peace, at his office in ＿＿＿＿ on ＿＿＿ of ＿＿＿, 19＿, at ＿＿＿ o'clock in the ＿＿＿, to answer what goods, chattels, rights, credits, or effects, of the said A.B. may be in their hands respectively; and have you then there this warrant, with your doings hereon duly certified.

contacts the court or appears at the scheduled hearing. *Id.* at 38; Hojnicki Dep. at 32. Under the Attachment Statute, the garnishment will be released once the defendant enters an appearance and "gives security." 10 *Del.C.* § 9589. The section does not specify what security the J.P. Court may require. Deputy Chief Magistrate Levenberg states that the policy is to order the attachment dissolved when a defendant contacts the court and agrees to appear in the case; no security is otherwise required. Levenberg Aff., ¶ 10; *see* Hojnicki Dep. at 30 (procedures for release developed by judges). Once the case reaches trial or a final judgment is entered, including a default if the defendant fails to appear, the court releases the attachment. Levenberg Aff., ¶ 11.

The hearing scheduled at the proceeding where the writ of attachment issued, which is generally set thirty to sixty days later, is a trial on the merits of the plaintiff's claim. If the defendant has not entered an appearance prior to that date, the attachment is released at the hearing. A defendant's failure to appear will result in the entry of a default judgment, but Deputy Chief Magistrate Levenberg points out that "[i]f after judgment the debtor contacts the court it is the normal practice of the Justices of the Peace to grant a motion to vacate the judgment and hear the case on the merits." *Id.*, ¶ 13.

## II. ANALYSIS

There are four substantive areas of the Attachment Statute that directly affect the Court's determination of its constitutional validity. First, the property interest affected can vary with each attachment, but the more common form of property reached is wages, through a garnishment procedure. Plaintiffs have directed their argument to wage garnishments, and cannot point to any evidence in the record of attachments of other classes of property. The Court therefore will limit its review of the constitutionality of the Attachment Statute to applications for wage garnishments. Second, the deprivation of a defendant's property occurs at the *prejudgment* stage of the debt action, and there has been no final adjudication on the merits when wages are garnished. Third, the purpose of the statute is to secure the defendant's appearance before the J.P. Court, and the creditor has no interest in the garnished wages and they cannot be used to satisfy a judgment. Fourth, disposition of cases in the J.P. Court is informal and the system is designed to efficiently adjudicate disputes without resort to more structured procedures. With these facts in mind, the Court will review the legal principles applicable to due process claims in this area.

### A. Procedural Due Process

A tetralogy of Supreme Court decisions considered the constitutional status of various prejudgment attachment statutes to determine what procedures were required before a person could be deprived of property. *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The Court of Appeals for the Third Circuit, in an exhaustive review of these cases, held that they establish the following principles:

> [N]otice and an opportunity to be heard before an attachment are not absolutely necessary. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor.

*Finberg v. Sullivan*, 634 F.2d 50, 58 (*en banc*), *adhered to*, 658 F.2d 93 (3d Cir. 1980) (*en banc*).[6]

634 F.2d at 57. The Third Circuit Court of Appeal's analysis, therefore, controls the decision in this case.

**6.** In *Finberg*, the court applied the Supreme Court precedents to *post*-judgment garnishment procedures, holding that the distinction between the timing of the deprivation was immaterial.

The analysis of the Attachment Statute begins with the review of the competing interests of the debtor-defendant, the creditor-plaintiff, and the state. *Id.* By identifying these interests, the Court can determine more precisely the procedures necessary under the circumstances to protect due process rights. The next step involves weighing the interests against the costs of requiring enhanced procedures by considering "the risk of an erroneous deprivation of such interest[s] through the procedures used, ... the probable value, if any, of additional or substitute procedural safeguards, [and] the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

### B. The Competing Interests

The interests of the creditor and the state are similar. The purpose of the Attachment Statute is to permit the J.P. Court to secure the debtor's presence at trial. The presumption underlying the statute is that the debtor has either fled the state or concealed himself to avoid answering for the alleged debt. The state permits the garnishment as a means of notifying debtors of the action and to compel their attendance. The mechanism created by the statute is essentially a last resort because the seizure of a debtor's property, even though temporary, can instill a sufficient incentive for that person to enter an appearance. The Supreme Court has noted that attachments used for jurisdictional purposes further "a most basic and important public interest." *Fuentes,* 407 U.S. at 91 n. 23, 92 S.Ct. at 1999 n. 23. That interest is the protection of citizens through the judicial process by permitting fair consideration of claims and not allowing persons to avoid debts, intentionally or otherwise. The creditor is equally interested in having a debtor brought before the

court, although that interest is limited to the particular claim involved.[7]

The debtor's interest is in the protection of property from an unjust encumbering, and the quick release of an attachment to permit the property's continued use. Where the attachment is accomplished by a wage garnishment, the debtor's interest takes on an even greater weight. *Finberg,* 634 F.2d at 58. The Supreme Court recognized in *Sniadach* that wages are "a specialized type of property presenting distinct problems in our economic system," and held that prejudgment garnishment requires notice and a prior hearing in order to protect that interest. 395 U.S. at 340, 342, 89 S.Ct. at 1823. Defendants argue the amount of wages that may be attached is fairly small, totalling only 15% of any one paycheck, and debtors can release the attachment upon entering an appearance at a time of their own choosing. A debtor's property interest, however, is not diminished by the length of the garnishment, and under the J.P. Court's procedures a deprivation can last for more than thirty days. The amount seized is certainly not insignificant, especially if the wage earner falls in a lower income bracket. Moreover, the debtor who has not been adjudged liable for a debt will not have had notice of the garnishment, and hence will be limited in his ability to plan how to replace or forego the missing funds. The debtor's interest in any property attached under the statute is particularly compelling.

### C. Review of the Attachment Statute

Plaintiffs argue the procedures under the Attachment Statute are constitutionally inadequate for three reasons: first, the affidavit required of the creditor-plaintiff is conclusory and does not protect property owners from erroneous attachments; second, the statute fails to provide for a predeprivation hearing or prompt hearing after the attachment; third, the notice to debtors

---

**7.** In post-judgment attachment cases, the creditor's primary interest is protection of assets that will secure the judgment from waste or concealment. *See Mitchell,* 416 U.S. at 608–09, 94 S.Ct. at 1900–01. The Attachment Statute does not permit use of the property for satisfaction of a judgment, and therefore the creditor's sole interest is in use of the property as a vehicle for attaining jurisdiction over the debtor.

is insufficient. The Court will consider these arguments seriatim.

### 1. Affidavit

■ In *Mitchell,* the Supreme Court upheld a Louisiana prejudgment sequestration statute because the applicable procedure "minimizes the risk that the [sequestration] writ will be wrongfully issued by a judge." 416 U.S. at 609–10, 94 S.Ct. at 1900–01. Two facets of the procedure effectively guarded against an erroneous deprivation: the writ was issuable only by a judge, and the affidavit clearly recited facts supporting the sequestration rather than being merely conclusory. *Id.* at 616, 94 S.Ct. at 1904; *see North Georgia Finishing,* 419 U.S. at 607, 95 S.Ct. at 722 (interpreting Mitchell holding); *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123, 1129 (3d Cir.1976) (same). Plaintiffs argue the required affidavit fails to provide the necessary facts from which a fair determination of the validity of the claim can be made before issuing the writ. The basic form of the affidavit for an attachment in lieu of summons is set forth in the margin.[8] The only factual information required is the debtor's name, and the amount and due date of the debt. The affiant is not required to report the basis for subscribing to the preprinted paragraph declaring the defendant has absconded or concealed himself.

The affidavit is conclusory, to the point of being perfunctory. In *Mitchell* the Supreme Court upheld the Louisiana sequestration statute where the creditor's affidavit clearly set out the facts and documentary proof supporting the need for an *ex parte* deprivation, thereby limiting the risk of a wrongful taking. 416 U.S. at 617–18, 94 S.Ct. at 1905. In *North Georgia Finishing,* on the other hand, the Court invalidated a Georgia garnishment statute because, *inter alia,* the creditor's affidavit "need contain only conclusory allegations." 419 U.S. at 607, 95 S.Ct. at 722. The cases make clear the proposition that a prejudgment deprivation can only occur where a judicial officer has the necessary factual record from which an independent determination of the validity of the claim and necessity of the deprivation can be ascertained.

The creditor's affidavit provides no factual basis for determining the validity of the debt. More importantly, there is no evidence available from the affidavit that the debtor either "conceals himself" or has the intent to defraud creditors. Creditors know with a fairly high degree of certainty where the debtor works, hence garnishment is possible, but need not state any factual reason in the affidavit why they believe debtors have absconded or concealed themselves. The affidavit is deficient for failing to provide the particularized facts necessary for a judicial determination of the need for the extraordinary *ex parte* garnishment.

Defendants argue the procedures followed by the individual Justices of the Peace cure any constitutional infirmities in

---

8.

IN THE COURT OF THE JUSTICES OF THE PEACE OF THE STATE OF DELAWARE IN AND FOR _____ COUNTY COURT NO. _____

_____ ATTACHMENT IN LIEU OF SUMMONS
vs.

STATE OF DELAWARE  Be it Remembered that on this _____ County, ss.  day of _____ A.D. 19__ before me, _____ a Justice of the Peace of the State of Delaware in and for _____ County, personally, came _____ _____ who being by me duly sworn according to law doth depose and say that _____ is the plaintiff in this action, that the defendant _____ is justly indebted to the said plaintiff in the sum of ____

_____ and that the same is justly and truly due, and is due upon a _____ _____ and that the defendant is a non-resident of the Sate of Delaware, or has absconded from this State, or conceals himself so that process of summons cannot be served upon him, and with intent, it is believed to defraud his creditors.

SWORN TO and subscribed before me this _____ day of _____ A.D. 19__.

_____ (SEAL)
JUSTICE OF THE PEACE

FORM NO. 2—AFFIDAVIT FOR ATTACHMENT IN LIEU OF SUMMONS

Pl. App. A–1.

the statutory requirements for the affidavit. The Justices of the Peace generally examine the creditor to determine if regular service had been unsuccessful, and require some documentary evidence, such as a returned summons showing a debtor's absence. *See* Levenberg Aff., ¶ 6 (creditors must first demonstrate unsuccessful service); Niedzielski Aff., ¶¶ 5–6 (in Cristiano case, creditor produced certified mail stamped "Moved Left No Address"). Extrastatutory procedures adopted in the J.P. Courts do not avoid the constitutional problems, especially where the plaintiffs have made a facial challenge to the statute. In the analogous area of nonresident service of process, the Supreme Court held in *Wuchter v. Pizzutti* that procedures not mandated by the statute cannot "supply constitutional validity to the statute or to service under it." 276 U.S. 13, 24, 48 S.Ct. 259, 262, 72 L.Ed. 446 (1928); *see Sterling v. Environmental Control Board*, 793 F.2d 52, 58 n. 4 (2d Cir.1976) ("extrastatutory measures cannot render valid a statute unconstitutional on its face," citing *Wuchter*, 276 U.S. at 24, 48 S.Ct. at 262), *cert. denied*, — U.S. —, 107 S.Ct. 579, 93 L.Ed. 582 (1986). Defendants' reliance on the particular procedures adopted by the Justices of the Peace, which are nothing more than informal policies, does not alter the Court's analysis of the plaintiffs' constitutional challenge.

I conclude the affidavit required in 10 *Del.C.* § 9583 does not meet the due process requirement that a prejudgment deprivation be made on the basis of specific facts demonstrating the validity of the debt and need for the extraordinary *ex parte* procedure.

## 2. Hearing

"A fundamental requirement of due process is an opportunity to be heard 'at a meaningful time' ". *Finberg*, 634 F.2d at 59 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1967)). The parties disagree on the point in the attachment procedure where a hearing will be meaningful and constitutionally required to protect a defendant's rights. Plaintiffs argue due process requires a pre-deprivation hearing while defendants assert the review procedures, including the opportunity to appeal to the Superior Court after the issuance of the writ, provides adequate protection of a debtor's property.

a. *Predeprivation Hearing.* Plaintiffs rely primarily on *Sniadach* and *Fuentes* to support the argument that a hearing is required *before* a Justice of the Peace can issue a writ of attachment. In *Sniadach*, the Supreme Court required provision of notice and a prior hearing for prejudgment wage garnishments. 395 U.S. at 342, 89 S.Ct. at 1823. In *Fuentes*, the Court invalidated Florida and Pennsylvania prejudgment replevin statutes permitting summary seizure of consumer goods because of the failure to provide a hearing before the items were taken by the creditor. 407 U.S. at 96, 92 S.Ct. at 2002. Plaintiffs argue the summary garnishment procedures mandated by the Attachment Statute, similar to the circumstances in *Sniadach* violate debtors' due process rights.

The Supreme Court recognized in *Fuentes* that the flexible nature of due process rights justifies postponing a hearing in "extraordinary situations." *Id.* at 90, 92 S.C.t at 1999. "These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing." *Id.* at 90–91, 92 S.Ct. at 1999–2000 (footnotes omitted). Among the circumstances where a predeprivation hearing may not be required are attachments "necessary to secure jurisdiction in state court...." *Id.* at 91 n. 23, 92 S.Ct. at 1999 n. 3; *see Jonnet*, 530 F.2d at 1129.

Although the predeprivation "extraordinary situation" exception has been noted by courts there has been no meaningful discussion of what the term means. It appears to be a conclusion rather than the starting point of the analysis. The proper approach is to apply the general balancing test described in *Mathews v. Eldridge* to determine whether a prior hearing is necessary, and if not, then the situation can be labeled "extraordinary."

■ A predeprivation hearing is clearly preferable because it virtually eliminates the possibility of an erroneous attachment. The costs of imposing such a procedure under the Attachment Statute, however, show that the hearing, even if it could be held, would not provide any additional benefit to debtors. *Mathews*, 424 U.S. at 319, 96 S.Ct. at 895. *Cf. Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1348 (7th Cir.1986). The writ of attachment is designed to locate and bring a missing defendant before the J.P. Court. Providing a hearing for a defendant who cannot be located through normal summons procedures would be an exercise in futility, and shifts the costs of securing defendant's appearance to the creditor completely where the debtor's unavailability is not attributable to the creditor. For jurisdictional attachments, a prior hearing requirement would effectively repeal the Attachment Statute because there would be no need to attach property once the plaintiff had secured the debtor's appearance in J.P. Court.

The debtor suffers the loss of an important property interest under the Attachment Statute, but it is nearly impossible to gain any added protection from a predeprivation hearing. The risk of an erroneous deprivation is present, but ultimately cannot be eliminated if there is to be a fair accommodation of the parties interests and the state's goal of efficiently securing the defendant's presence in J.P. Court.

b. *Postdeprivation Hearing.* Under the Attachment Statute, the only hearing scheduled upon issuance of the writ is a trial on the merits of the debt action. Defendants argue the delay in providing a hearing does not violate due process because the amount garnished entails only a small sum and the debtor's interest in the item is minimal. Defendants also point to two opportunities that a debtor has in which the attachment can be considered and in fact will be released. First, if the debtor contacts the J.P. Court and agrees to appear then the Justice of the Peace will issue the necessary letter or order directing release. Levenberg Aff., ¶ 10. If the defendant first appears at the scheduled trial

then the attachment ceases at that time. The statute, however, does not set forth any specific period in which the hearings must be held, although the J.P. Court's practice is to set them thirty to sixty days after the attachment.

The second means to challenge the attachment is under 10 *Del.C.* § 3513, where the debtor can petition for a review of the grounds for the attachment in the Superior Court instead of entering an appearance in the J.P. Court. Section 3513 permits a debtor to file a motion in Superior Court, after which that court will consider whether the grounds for the attachment are sufficient. If they are not sufficient, the property will be released. The defendants maintain that this opportunity for review by a higher court meets the requirements of due process when considered in conjunction with the attachment release procedures the Justices of the Peace follow.

Defendants appear to have misapprehended the hearing requirements where a prejudgment deprivation occurs. In *Mitchell*, one primary reason the Supreme Court permitted an *ex parte* prejudgment deprivation was the statute's provision of a "full and immediate post-termination hearing." 416 U.S. at 611, 94 S.Ct. at 1902. The Court pointed out in *North Georgia Finishing* that "[a]lthough the length or severity of a deprivation of use or possession would be another factor to weigh in determining the *appropriate* form of hearing, it was not deemed to be determinative of the *right* to a hearing of some sort." 419 U.S. at 606, 95 S.Ct. at 722 (emphasis added). The Third Circuit Court of Appeals stated in *Finberg*, "When the [hearing] is deferred until after a provisional seizure of property, it must not be unnecessarily deferred much beyond that time." 634 F.2d at 59. Where a garnishment of wages is the form of attachment, the debtor's interest is strong enough to compel a prompt postdeprivation hearing on the seizure when a predeprivation hearing is not constitutionally mandated.

The Attachment Statute does not provide on its face a time within which the hearing must be held. Section 9589(a) only states

that "at any time before final judgment" the defendant may enter an appearance, thereby dissolving the attachment. The burden of seeking the release and when it will be reviewed by the J.P. Court is placed entirely upon the defendant. Assuming a debtor receives notice of the attachment, the statute has no provision to insure the debtor receives a reasonably prompt hearing on the attachment.

█ The Attachment Statute's failure to provide any type of prompt hearing violates the due process rights of debtors whose property has been attached. *See Finberg*, 634 F.2d at 59 (fifteen-day delay before ruling on attachment unconstitutional); *Neeley v. Century Finance Co. of Arizona*, 606 F.Supp. 1453, 1466 (D.Ariz. 1985) (twenty-day waiting period excessive under due process clause). The appeal of an attachment to the Superior Court, available under § 3513, does not cure the defect in the statute. The defendant again bears the burden of challenging a deprivation of an essential property interest that occurred without notice. There are no time limits imposed *requiring* a review of the attachment, and the debtor using this procedure is forced to seek relief in a different court. Moreover, there is no notice provided a defendant that this avenue of appeal is open, and resort to the Superior Court undermines the informal and efficient adjudication process of the J.P. Court.

The Court holds the Attachment Statute's failure to provide a prompt postdeprivation hearing unconstitutionally violates the debtors' due process rights.

**D. Notice**

█ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice...." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865. Plaintiffs argue the Attachment Statute wholly fails to insure debtors will receive notice that their property has been seized. There is also a substantial question whether the form of notice to J.P. Court defendants meets the requirements of due process.

The procedures for serving the writ of attachment may be made in the same manner as service of a regular summons. The J.P. Court's procedures are that upon issuance of the writ the constable delivers it, together with copies of the affidavit and complaint to the employer to effect a garnishment. The constable then notes on the back of the writ that service has been made, but does not ascertain whether any of the debtor's wages are, in fact, attachable through the parties served. No further inquiry is made by the J.P. Court on the status of the attachment and the court will not know whether the attachment has been successful until the debtor contacts the court or appears at the scheduled trial. Cheeseman Dep. at 15. Once the papers have been served it is up to the garnishee to forward the documents to the defendant. Although the statute effectively creates an intermediary process server, there is no mechanism to insure the debtor receives notice. *Id.* at 34. If a debtor is to be deprived of an important property interest through an *ex parte* procedure, prompt and adequate notice must be provided. The Attachment statute does not ensure such notice because only the garnishee, not the debtor, is directly informed of the deprivation after it occurs.

The *content* of the notice also presents problems. *Cf. Memphis Light, Gas & Water Division v. Kraft*, 436 U.S. 1, 14 n. 15, 98 S.Ct. 1554, 1563 n. 15, 56 L.Ed.2d 30 (1978). The forms used by the J.P. Court, which a debtor *may* receive from the garnishee, only provide the name of the plaintiff, the amount of the alleged debt, and the date of the trial. The papers do not inform the debtor of how to release the attachment, or even who may be contacted for further information on the proceeding. The Justices of the Peace and constables have repeatedly emphasized the limited goal of the attachment, i.e. entry of an appearance, and the ease with which it will be released, yet the forms leave debtors completely in the dark as to how to protect their property. If the attachment is concerned solely with securing an appearance, then the notice to the debtors must also

fairly inform them of the means of recovering their wages.

The Court holds the notice to debtors for executing garnishments under 10 *Del.C.* §§ 9581–9590 unconstitutionally fails to inform debtors of the deprivation and the procedures to effect release of the garnishment.

### III. CONCLUSION

I have held the Delaware Attachment Statute, 10 *Del.C.* §§ 9582–9590, unconstitutionally deprives persons whose wages have been garnished their procedural due process rights of notice and prompt postdeprivation hearing. The Attachment Statute also unconstitutionally fails to provide the requisite factual basis through a creditor's affidavit for an *ex parte* prejudgment deprivation.